UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ODGERS BERNDTSON, LLC,

                Plaintiff,

-against-

JAVIER O'NEIL and VALERIA ESCAMILLA,

                Defendants.

Case No. 1:21-cv-05652 _____

**DECLARATION OF**
**JACOB P. DEUTSCH**

      Jacob P. Deutsch declares under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that:

      1.      I am over eighteen years of age and am competent to testify as to the matters in this declaration.

      2.      I had previously, through my limited liability company, Zyndykyt, L.L.C. ("Zyndykyt") provided services to what I was told was Odgers Berndtson, LLC ("Odgers") on a project-by-project basis beginning on or about January of 2021.

      3.      That relationship began when I signed, on behalf of my company, a Mutual Non-Disclosure Agreement in 2021. Attached hereto as **Exhibit 1** is a true and correct copy of the Mutual Non-Disclosure Agreement between Odgers and Zyndykyt. It was in this capacity that I worked with defendants Javier O'Neil ("O'Neil") and Valeria Escamilla ("Escamilla").

      4.      From January 2021 onward, O'Neil periodically engaged me and my limited liability company for various projects. It was my understanding through approximately the end of April 2021 that all of these projects were requested by Odgers. I was paid by O'Neil for my work, through Upwork, an independent contractor platform (where I had first connected with Odgers), and Venmo.

5.  From January through April of 2021, O'Neil repeatedly promised that Odgers would engage my entity on a monthly basis. During this period, on or about March 31, 2021, O'Neil first mentioned Odgers potentially needing a download of data from Odgers' cloud data lake for back-up purposes. On April 1, 2021, O'Neil sent me a message through Signal specifying that he needed to have "some too large files" downloaded from Odgers' data lake. O'Neil asked if I could "discreetly [download the files] to a drive." I said I could help him with his project. Attached hereto as **Exhibit 2** is a true and correct copy of the text messages I exchanged with O'Neil on April 1, 2021.

6.  During these conversations, O'Neil explained to me that he needed me to download certain data files and application files, which constituted the client-facing portal developed by Odgers. O'Neil explained to me that they did not know how to use the command line to backup the files and needed someone with my computer knowledge to perform the download. The files were located on a specific portion (AWS S3) of Odgers' data lake.

7.  On or about April 5, 2021, O'Neil and Escamilla created a group chat on Signal, an encrypted messaging app, and invited me to join, which I did. That night, Escamilla provided me credentials to log on to Odgers' cloud data lake site to conduct the download they requested. Attached hereto as **Exhibit 3** is a true and correct redacted copy of the text messages I exchanged with O'Neil and Escamilla on April 5, 2021.

8.  I was told exactly where to go and what to download by O'Neil and Escamilla on a phone call with O'Neil and Escamilla. The credentials that O'Neil and Escamilla provided me were not in my name but were instead designed for an India-based developer with which Odgers had developed their client-facing portal. I discussed with O'Neil and Escamilla what specifically they wanted downloaded from Odgers system. They told me that when I entered the system the

IP logging would not be active in the data buckets they wanted copied, and it was not. This is the equivalent of shutting off the security system so that entries to the system would not be logged. They also requested that I attempt to provide a minimal digital footprint when doing so for reasons they did not explain. Given that there were two company representatives asking me to do so, I thought this was permissible although now I believe that they were using me to copy documents in a way that could not be traced back to them.

9. On April 6, 2021, I confirmed to O'Neil and Escamilla that "1.3 TB [terabytes] of the … Data in 'Odgers Berndtson Data Deliveries', in addition to the 'Odgers HM App Files' are all downloaded." Escamilla responded, saying "Amazing. Thank you." Attached hereto as **Exhibit 4** is a true and correct redacted copy of the text messages I exchanged with O'Neil and Escamilla on April 6, 2021. Ultimately, in total, 32,570 files were downloaded and copied to an external drive.

10. Escamilla followed up with me the same day, asking if there would be "any use in extracting anything" from a connected "instance". *Id.* She indicated that their interest was "replicat[ing] this app in a separate environment" and wanted to be sure the "app files would be all we need." "[R]eplicat[ing] this app" means recreating the app outside of the server it was copied from. I said I could copy that "instance" as well if they needed it, just in case. Escamilla pointed me to where the files were located. I proceeded to notify them on a phone call that the active instance would need to be taken offline in order to backup the instance's files to the external drive. Upon my request to take the instance offline to do so, they asked if there would be evidence in the server log files that I took the instance offline. When I answered "yes" to their question, Escamilla and O'Neil rejected my request to take the server offline. Subsequently, O'Neil and Escamilla

instructed that I do not proceed with backing up the instance, with which I complied, as Escamilla and O'Neil agreed that they could "just recreate a similar instance".

11. On April 8, 2021, O'Neil contacted me via signal to ask how the export from Odgers' data lake went. I told him that the export was flawless, although it was a bit larger in size than originally anticipated. I confirmed with O'Neil that April 11, 2021 would still work for me to drive to his house and deliver, among other things, the drives. He confirmed. Attached hereto as **Exhibit 5** is a true and correct redacted copy of the text messages I exchanged with O'Neil on April 8, 2021.

12. I met with O'Neil at his home on or about April 11, 2021, where I gave O'Neil two SATA drives containing copies of the downloaded data. O'Neil had indicated that one of the drives was for Escamilla. I retained a copy of the data as well, which I subsequently turned over to Odgers.

13. On April 15, 2021, Escamilla contacted me again. She explained that "[a] few updates were released this week" for the downloaded app files. She said that O'Neil and she wished to "be sure we backed up the latest version" and asked me (1) to download the HM App files again and (2) to provide the new download to O'Neil via OneDrive. I agreed and uploaded the files to an encrypted Dropbox folder instead, as an encrypted Dropbox folder is more secure than OneDrive. Attached hereto as **Exhibit 6** is a true and correct copy of the text messages I exchanged with Escamilla on April 15, 2021.

14. I then sent the Dropbox link to both O'Neil and Escamilla. Escamilla replied less than five minutes later, saying "[t]hank you!" Attached hereto as **Exhibit 7** is a true and correct copy of the text messages I exchanged with O'Neil and Escamilla on April 15, 2021.

15. I was unaware that O'Neil and Escamilla intended to resign from Odgers on April 16, 2021.

16. On or about April 22, 2021, I followed up with O'Neil regarding the long-term contract I wished to enter into with Odgers that I had long expressed interest in executing. O'Neil responded to me, saying the delay was due to "just a little internal power struggle going on that we are almost through." Attached hereto as **Exhibit 8** is a true and correct copy of the text messages I exchanged with O'Neil on April 22, 2021. At no point during that conversation did O'Neil state that he had already left Odgers.

17. On or about April 29, 2021, I met with O'Neil again at his house as I was again interested in signing a long-term contract with Odgers. I noticed a new safe in the house, to which I half-jokingly stated that it must be where the drives were being kept. O'Neil did not deny that the drives were kept in the safe.

18. At or about the same time in April, O'Neil informed me that he left Odgers to join Teneo, a competitor of Odgers. He assured me that Teneo was interested in bringing me on long-term. This, however, turned out to be as false as his claims that he was asking me to perform my earlier projects on behalf of Odgers. For approximately two months I was strung along by O'Neil with no contract in sight.

19. After April 15, including at the end of April, O'Neil mentioned on several occasions the files saved from Odgers' system and using them as a "baseline" for his work at Teneo.

20. I subsequently contacted Odgers and shared information concerning the aforementioned conduct.

21. I am presently employed by Odgers.

Dated: Brighton, Massachusetts
June 28, 2021

*Jacob P. Deutsch*
Jacob P. Deutsch